UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| WILLIAM M. MORRISON, | : | Case No. 06-23520-TPA |
| *Debtor* | : | Chapter 13 |
| | : | |
| WILLIAM M MORRISON, | : | |
| *Movant,* | : | |
| | : | |
| OFFICE OF THE US TRUSTEE, OFFICE | : | |
| OF THE CHAPTER 13 TRUSTEE, | : | |
| AMERICAN EXPRESS CENTURION | : | |
| BANK, CARDMEMBER SERVICES, | : | |
| CHASE BANK USA NA, BY ECAST | : | |
| SETTLEMENT CORPORATION AS ITS | : | |
| AGENT, DISCOVER, DISCOVER | : | |
| BANK/DISCOVER FINANCIAL | : | Related to Document Nos. 57, 67 |
| SERVICES, ECAST SETTLEMENT | : | |
| CORPORATION, ASSIGNEE OF | : | |
| HOUSEHOLD BANK, FIRST | : | |
| COMMONWEALTH BANK, FIRST | : | |
| COMMONWEALTH BANK C/O | : | |
| THOMAS E. REIBER, ESQUIRE, | : | |
| TUCKER ARENSBERG, P.C., IRS, | : | Hearing: November 14, 2007 at 2:30 P.M. |
| KAWASAKI RETAIL SERVICES | : | |
| KIMBERLY ESTATES, PA | : | |
| DEPARTMENT OF REVENUE, SALLIE | : | |
| MAE, SALLIE MAE EDUCATION | : | |
| CREDIT FINANCIAL CORP., | : | |
| STANWOOD FEDERAL CREDIT | : | |
| UNION, | : | |
| *Respondents* | : | |

*Appearances:*      David A. Colecchia, Esq., for Debtor/Movant
Richard Bedford, Esq., for Ch. 13 Trustee

## *MEMORANDUM OPINION AND ORDER*

Currently before the Court is the Debtor's ***Request to Withdraw*** filed at Document

No. 67 seeking withdrawal of his prior Motion filed at Document No. 57 which sought

reconsideration of a dismissal order. Also, contained in the Debtor's *Request to Withdraw* is a

1

separate request to dismiss the Debtor's case, generally.  For the reasons that follow, the Court will treat the Debtor's *Request to Withdraw* as a motion, grant the request to withdraw the previously filed reconsideration motion and deny the request to dismiss the Debtor's case, generally, as moot since the case has already been dismissed.[1]

## *FACTS*

On July 28, 2006, William M. Morrison ("Debtor") filed his voluntary Petition under Chapter 13 of the United States Bankruptcy Code.  On August 6, 2006, the Debtor filed his proposed Chapter 13 Plan ("Plan") providing for no payment to unsecured creditors.  At the September 18, 2006 Conciliation Conference held immediately following the *§341(a)* First Meeting of Creditors the Debtor agreed, among other things, to file a 100% Plan for the benefit of unsecured creditors.  This agreement was in response to the Chapter 13 Trustee's objection to the Plan since the Debtor wished to keep his Kawasaki dirt bike and make payment of the secured lien attached to it at the expense of unsecured creditors. When the Debtor agreed to file an Amended Plan providing a 100% distribution to unsecured creditors, the Trustee withdrew her objection and recommended that the Plan be confirmed on an interim basis.  On September 27, 2006, the Court entered an *Order of Court Confirming Plan as Modified and Setting Deadlines for Certain Actions* at Document No. 18 ("Confirmation Order") confirming the August 6, 2006 Plan on an interim basis.  In addition to the standard confirmation language contained in its orders, acting on the agreement of the Parties, the Court required the Debtor to file an Amended Plan on or before January 5, 2007, providing for the

---

[1]        The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue.  This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(B), (F), (K)* and *(O)*.

agreed upon 100% distribution to general unsecured creditors.  The *Confirmation Order* further provided that the case would be dismissed without further notice or hearing if an Amended Plan was not timely filed and served.

No Amended Plan was filed by the deadline.  On January 26, 2007, the Court therefore dismissed the Debtor's case for failure to timely comply with the clear terms of the *Confirmation Order*.  On February 5, 2007, at Document No. 24 the Debtor filed his first motion to reconsider the dismissal order, entitled *Motion for Reconsideration Motion to Reopen* ("First Reconsideration Motion") claiming that the Debtor was unable to pay 100% of the unsecured debt but still desired to maintain payments on the Kawasaki dirt bike. Another basis for reconsideration alleged by the Debtor was that his attorney, David A. Colecchia, Esq. ("Colecchia"), "missed" the provision in the *Confirmation Order* requiring the filing of an Amended Plan.  Other than this vague reference to the conduct of Counsel, no other basis for reconsideration was specified in the *First Reconsideration Motion*.

For a number of reasons, [2] on February 7, 2007, this Court denied the Debtor's *First Reconsideration Motion* without prejudice to refiling.  In the event of refiling, the Court was concerned about notice to those unsecured creditors who were anticipating a 100% distribution in reliance upon the interim confirmation of the August 6th Plan.  Therefore, in the same Order, among other things, the Debtor was directed to file an Amended Plan complying with the *Confirmation*

---

[2]        The *Local Rules* of this Court require those appearing before it to comply with the specific scheduling requirements of each judge.  *Local Rule 9013-5(A)*.  In this Court, for purposes of Chapter 13 matters, all judges adhere to a form of the "Self-Scheduling Rule" for certain hearings, *i.e.*, the party filing the motion actually chooses the hearing date and time from a pre-set list of dates and thereafter serves  "Notices" to the other, involved parties, immediately following which time the motion papers are filed with the Court.  Despite being directed to do so, Colecchia failed to self schedule the *First Reconsideration Motion* which served as an additional reason for immediate dismissal of the Motion.

3

*Order* by providing a 100% distribution to unsecured creditors. Simultaneously, in the event reconsideration of the dismissal order was to occur, the Debtor was directed to file a separate "Motion to Reconsider Dismissal Order" alleging specific reasons for reconsideration and offering an explanation as to why the Debtor failed to comply with the clear deadlines set forth in the September 27, 2006 *Confirmation Order*. A rule to show cause hearing was scheduled requiring Colecchia to personally appear and explain why sanctions should not be imposed against him for his continued failure to timely comply with, among others, the deadlines set forth in the *Confirmation Order*.[3]

At the February 22, 2007 Rule to Show Cause hearing the Court confronted Colecchia regarding his repeated failures to timely comply with the time limits set forth in the *Confirmation Order* as well as similar orders in various other, pending cases. Based upon Colecchia's representations, this Court specifically found that Colecchia was "either intentionally failing to comply with the Orders of this Court or, at the very least, demonstrating reckless indifference to compliance with this Court's orders."[4] In hopes that the in-Court admonishment would rectify the situation, the

---

[3]    Normally the Court would take a more measured approach against an attorney who failed to comply with one of its deadlines by simply issuing a second order requiring compliance within a certain time period or suffer a dismissal. However, at about this time, Colecchia had been ignoring a number of filing deadlines set by order of this Court in several of his other pending Chapter 13 cases. Nor was this the first time the Court had been confronted with conduct by Colecchia implicating his professionalism in practicing before this Court. As a result of Orders entered on August 16, 2005, and October 18, 2005, respectively at Document Nos. 180 and 192, in the matter of *In re Scott G. Critchfield and Tracy M. Critchfield*, Case No. 03-35715, Adv. No. 04-2517, Colecchia was monetarily sanctioned for his lack of candor to the Court when requesting an extension of discovery in a pending adversary proceeding. Monetary sanctions have also been issued or threatened by this particular Court for Colecchia's repeated failure to attend conciliation conferences and failure to timely file documents. *See In re Rosemarie M. Fike*, Case No. 05-32446, Order filed on May 5, 2006, at Document No. 48; *In re Lee Eygabroad*, Case No. 06-24260, Order filed on January 9, 2007, at Document No. 44. In light of his history of repeated failure to comply with various court orders, it was deemed appropriate to formally summon Colecchia to appear in this matter so as to allow Colecchia an opportunity to provide an explanation for his continued non-compliance in hopes of preventing repetitive, future failures on his part. Apparently providing this opportunity was to no avail. Since filing the *Request to Withdraw* in this case, Colecchia missed yet another filing deadline for which he has been sanctioned by this Court. *See In re Jeffrey Turmo and Sherri Turmo*, Case No. 05-25581, Adv. No. 06-2394, Order dated September 26, 2007, at Document No. 82.

[4]    *Memorandum Order* dated February 26, 2007, Document No. 38.

4

Court vacated the Rule to Show Cause while warning Colecchia that any future failure to timely comply with orders of this Court, without legitimate and appropriate excuse, would subject Colecchia to progressive sanctions.[5]

Prior to the February 22, 2007 show cause hearing Colecchia, on behalf of the Debtor, filed a Motion entitled "Motion to Allow or Vacate an Order Requiring a Nunc Pro Tunc Filing of a Section 506 Cram Down Combined With a Request to Vacate a Plan Requirement of 100% to Unsecureds" specifically naming the Chapter 13 Trustee and First Commonwealth Bank as respondents as well as including in the caption as Respondents the phrase "All Creditors Listed in the Current Matrix." (Document No. 34).    At the same time, Colecchia filed an Amended Plan (Document No. 35) which sought confirmation of a "0% Plan" and allowed the Debtor to retain the Kawasaki dirt bike, in direct contravention of the agreement reached with the Chapter 13 Trustee which served as a basis for the September 27, 2006 *Confirmation Order* and this Court's February 7, 2007 subsequent Order directing that a 100% Amended Plan be filed consistent with the requirements of the *Confirmation Order.*

Because the proposed Amended Plan filed by Colecchia sought to divest unsecured creditors of their anticipated 100% payment required by the *Confirmation Order*, on February 22, 2007, this Court issued yet another Order (entered on February 27, 2007 at Document No. 38) which, although recognizing the untimely filing of the Amended Chapter 13 Plan, vacated the prior dismissal order and reopened the case.  Furthermore, the Debtor was required to timely file and serve

---

[5]        Monetary sanctions were designated, in advance, in the event of Colecchia's next three failures to timely comply with any order of this Court: $250, $350 and $450, respectively.  In the event of a third incident, the Court also put Colecchia on notice that it would notify the Pennsylvania Disciplinary Board of Colecchia's recidivist conduct and bring the matter before the Judges of this Court to determine whether Colecchia's privilege to practice before it should be suspended or revoked.

a separate motion requesting that the September 27, 2006 *Confirmation Order* be modified pursuant to *11 U.S.C §1329*. The Order also directed the Debtor to specifically name as a respondent in the motion caption each and every party affected by the "0% Plan". The purpose for this requirement was to provide particularized notice to the unsecured creditors that their payment rights would be affected upon approval of the proposed Amended Plan. The Order also directed that the anticipated *Section 1329* Motion be served on all respondents and "self-scheduled" for hearing before the Court.

On March 12, 2007, contrary to the Court's directive regarding the caption content, the Debtor filed his next pleading. Although the Motion title was extremely vague and confusing,[6] apparently it was intended to respond to the Court's February 22, 2007 Order. Likewise, the allegations in the Motion were rambling and confusing but also appeared to be an attempt to respond to the February 22, 2007 Order. As noted, once again the Motion failed to identify in its caption any specific creditors as respondents instead identifying the respondents by inserting in the caption the phrase "All Creditors in the Debtor's Matrix." Also, the Motion itself failed to articulate the manner in which the proposed Amended Plan might impact the anticipated 100% return previously promised in the *Confirmation Order* to unsecured creditors. Because of the above deficiencies, by Order dated March 16, 2007 ("March 16th Order"), the Motion was once again dismissed without prejudice to refiling, allowing the Debtor an additional opportunity to comply with this Court's prior Order.

On March 29, 2007, apparently in response to the March 16th Order, Colecchia filed what he designated on the record under the CM/ECF category of *Amended Motion*, a document that

---

[6]      "Motion in Compliance with Paragraph 2 of Docket Document No. 39 to Modify Paragraph H of the Order of Court Issued at Docket Document No. 18." *See Motion* filing, Document No. 44.

6

consisted only of a "proposed order" which did not appear to comply in any respect with the March 16[7] Order. Yet true to form, in the caption of the proposed order, Colecchia again referred to the respondents by using the phrase "All Creditors in the Debtor's Matrix". [8] Again, this caption was directly contrary to this Court's prior orders requiring that any creditors against whom relief was sought were to be specifically named as respondents in the motion caption. Thus, as of that time, no actual motion had been filed seeking to modify the August 6, 2006 Plan which had previously been confirmed on an interim basis.

After receiving a "corrective notice" from the Clerk's Office regarding the March 29, 2007 filing, on March 30, 2007, Colecchia finally filed what ostensibly appeared to be the required motion to amend the Plan previously confirmed on an interim basis. Despite a prior directive from the Court to specifically title the Motion in a short, clearly worded manner designed to minimize confusion to respondents as to its intended effect,[9] Colecchia utilized the following language which

---

[7]    Although initially causing considerable consternation and anxiety to court personnel, judges and attorneys alike, practically all now agree that electronic filing is a productive technological advancement making the entire bankruptcy filing process and case management system easier and more efficient. But as with all process and procedure there can be drawbacks and potentials for abuse. Without making any finding specifically related to this case, based on the Court's experience in reviewing many documents filed in the CM/ECF system, a number contain deficiencies that should have been readily apparent by even a cursory review by counsel whose electronic signatures appear on the pleadings. The inescapable conclusion reached based on these observations is that some documents are being filed by non-attorney law office personnel without prior review by the attorney who has putatively filed it. In this District, *Electronic Case Filing Procedure #8* provides that an attorney's electronic signature on a document filed in the CM/ECF system is equivalent to a signature under *Fed.R.Bankr.P. 9011(a)*. Any electronic filing of a document that is "signed" by an attorney who has not actually reviewed the document can subject that attorney and the attorney's firm to a *Rule 9011* sanction. See *In re Rivera*, 435, 458-59 (D. N.J. 2006); *Fed.R.Bankr.P. 9011(c)*.

[8]    Causing further confusion by the documents he filed, Colecchia failed to be consistent in referencing the group of alleged creditor respondents in the various captions he employed. For instance, at times he used the above phrase. At other times he used the phrase "All Creditors Listed in the Current Matrix", *e.g., See Motion* at Document No. 34. In all the pleadings he did separately name the Chapter 13 Trustee as a Respondent.

[9]    In the *March 16th Order*, the Court also directed Colecchia to use a specific title for his motion, i.e., "Amended Motion to Modify the September 27, 2006 Confirmation Order." The purpose of this directive was to further assure that any Respondent receiving the motion would immediately be apprised of its purpose upon reading the concise yet descriptive motion title. Once again, Colecchia apparently chose to ignore the requirements of this aspect of the Order.

7

was so prolix and convoluted that even a person with an intricate knowledge of the subject area, not to mention a creditor with limited legal background of the pending matters, would face extreme difficulty in ascertaining the purpose of the document:

> Amended Motion Filed in Compliance with Paragraph 2 of the March 16, 2007 Order Found at Docket Document No. 46 to File an Amended Motion to Modify the Court's September 27, 2006 Order Found at Docket Document No. 18 Such as to Satisfy the Court's Order of February 22, 2007 Found at Docket Document No. 38.

*See Amended Document* filing, Document No. 51.  Although the title to the Motion failed to convey its purpose, a fair reading of the body of the Motion did indicate that this document was intended to serve as the Debtor's Motion to amend the previously confirmed Plan.  But once again, the caption failed to specifically include the name of any creditor affected by the Motion.  Nor did the Motion articulate in its body the specific manner or extent to which each affected creditor's rights were being modified by the proposed Amended Plan when compared to the previously confirmed August 6, 2006 Plan.  As a result, by Order dated April 4, 2007, the Court once again dismissed the case without prejudice to refiling due to Debtor's continued and repeated failure to comply with its orders.

On April 16, 2007, at Document No. 57 Colecchia filed another motion to reconsider, this time containing a more direct and succinct title, *i.e.*, *Motion for Reconsideration Motion to Reopen* ("Second Reconsideration Motion").  For the first time, the *Second Reconsideration Motion* included the required caption specifically naming each affected party as a respondent.  In the body of the *Second Reconsideration Motion*  Colecchia alleged that, contrary to the Court's most recent dismissal order, he had in fact complied with the deficiency upon which the Court relied in dismissing the case for the second time.  Colecchia contended that use of the phrase "All Creditors in the

Debtor's Matrix" rather than the more specific caption actually required by the Court, fully complied

with the Court's prior Orders for several reasons.  He argued that this was the style of caption used

by the Court in all prior filings to date, and that the certificates of service prepared by him and

accompanying the motions specifically identified certain individuals and entities.  Therefore, Colecchia

argued in the *Second Reconsideration Motion* that he was justified in simply inserting the above

phrase despite this Court's specific Orders to the contrary.   As a result, Colecchia claimed

reconsideration pursuant to *Fed.R.Bankr.P. 9024* was appropriate.   An argument was thereafter

scheduled.

At the May 9, 2007 argument, Colecchia expanded upon the reasons set forth in

Debtor's *Second Reconsideration Motion*  to justify reconsideration of this Court's dismissal order.

In an often animated exchange with the Court[10]  Colecchia claimed that the *Local Rules* promulgated

by the Bankruptcy Court[11] were "illegal" and the judges enforcing them lacked "jurisdiction" or the

power to enforce them by requiring that the parties against whom relief is sought be specifically

named and identified as respondents in the caption.[12]  As such, and regardless of this Court's clear,

repeated directions to the contrary, of which Colecchia acknowledged he was aware and understood,

[13] Colecchia admitted he intentionally chose to continue using the phrase "All Creditors Listed in the

---

[10]        Several times during the hearing, due to the tone of his comments, his failure to respond to direct questions posed to him by the Court and his overall conduct, which at one point involved walking away from the podium and throwing a pen onto nearby counsel table in apparent disgust with the duration of the Court's inquiry, Colecchia was threatened with a contempt citation if the same continued.  Fortunately for Colecchia, soon after the "walking away from the podium" incident the hearing concluded without any further opportunity for input by Colecchia.

[11]        And subsequently approved by the U.S. District Court for the Western District of Pennsylvania.  See *Bkrty. Ct. W.D. Pa. Order #2004-5.*

[12]        *See Transcript of Proceeding*, May 9, 2007, p. 10-11, Document No. 63.

[13]        *Id at* p. 9, l. 12-13.

Mailing Matrix" in reference to the creditor Respondents when responding to this Court's various orders. Colecchia claimed that pursuant to *Fed.R.Civ.P. 10(c),* made applicable in the bankruptcy context by *Fed.R.Bankr.P. 7010(c)*, it was his right to do so. According to Colecchia, *Rule 10(c)* allows for use of "incorporation by reference" when identifying the parties to an action in the caption of a document. Therefore, Colecchia claimed he was justified in continuing to simply incorporate the "Matrix" into the caption by reference since by doing so he followed the applicable bankruptcy procedural rules which pre-empted any order of this Court or local rule. It was for this reason that Colecchia disagreed with the Court's prior directives and chose to ignore them when filing the various motions in this case.[14]

At the conclusion of the May 9th hearing the Court orally denied the Debtor's *Second Reconsideration Motion*. That Order was thereafter stayed pending receipt of the hearing transcript to allow the Court an opportunity to review the same and issue a written order. It was during this time that the Debtor's *Request to Withdraw* (Document No. 67) was filed seeking withdrawal of the *Second Reconsideration Motion* for which the May 9, 2007 hearing was originally convened. The *Request to Withdraw* also "directed" the Clerk to dismiss the Debtor's case.[15]

---

[14]     As noted, Colecchia admitted that he understood the Court's directive and what it required of him but he believed the Court to be without "jurisdiction to enter it" and to do so was "actually illegal under the Bankruptcy Rules and violates the Bankruptcy Rules." As a result he chose not to comply. *See Transcript of Proceeding*, May 9, 2007, p. 10, l. 3-6, p. 11, l. 9-10, Document No. 63.

[15]     By filing such a document Colecchia once again employed an inappropriate procedure meriting issuance of yet another "corrective entry" in this case by the Clerk. Although filed by Colecchia under the "Motion" category where he selected the CM/ECF "event" pursuant to the CM/ECF docketing system entitled "Motion to Dismiss Case," in actuality the document was not a motion at all but a "notice" of withdrawal of a prior motion. Nor was it linked to the motion Colecchia sought to withdraw. Although the corrective entry was posted, the Court did not require any additional filing consistent with its CM/ECF procedures, unlike the 11 other pleadings filed by Colecchia in this case, 7 of which merited corrective entries and refilings due to use of improper filing procedures. In this case, looking only at the basic electronic filing procedures with which all counsel are expected to be familiar, and not even considering the other matters discussed in this Opinion, Colecchia "got it right" only 36% of the time.

## *DISCUSSION*

The first item for consideration is the Debtor's *Request to Withdraw*. The Court is unaware of any provision under either the *Federal Rules of Bankruptcy Procedure* or its *Local Rules* that would permit a party to proceed by way of a "request", directed to the Clerk and instructing the Clerk to withdraw a prior pending motion. The proper procedure to follow when seeking the withdrawal of a pending motion is to file a separate motion seeking to have the pending motion withdrawn. *See Fed.R.Bankr.P.* 9013 (a request for an order, except when an application is authorized by the Bankruptcy Rules, must be by written motion unless made during a hearing); *Fed.R.Bankr.P. 7007(b)(1)* (same); *60 C.J.S. Motions and Orders §41* (2007)(after a motion has been submitted it may not be withdrawn without the consent of the court). This is particularly true when, as here, a pending motion has already been argued and is in line for decision. The Court can foresee the potential for mischief if a party were permitted to unilaterally act to withdraw its motion in these circumstances. Hence, the practice of filing any document, however titled, which purports to unilaterally direct the Clerk to withdraw a pending motion, is not appropriate.

In most cases the Court is inclined to overlook procedural irregularities that do not implicate substantive rights of the parties. That policy of tolerance is put to the test in the present case because of Colecchia's extensive track record in failing to comply with various Court orders and rules. Nevertheless, pursuant to *Fed.R.Civ.P.* 61, made applicable in bankruptcy proceedings pursuant to *Fed.R.Bankr.P.* 9005, the Court will disregard this error and treat the *Request to Withdraw* as comprising a motion with a dual purpose, i.e., seeking leave to withdraw the *Second Reconsideration Motion* and apprising the Court of the Debtor's consent to dismissal of the case

11

without prejudice. To the extent the Motion seeks withdrawal of the *Second Reconsideration Motion,*
it will be deemed granted.  In light of this disposition of that part of the motion, the remaining part
of the motion seeking dismissal of the case without prejudice will be denied as moot because that
already is the status quo of the case pursuant to the Court Order of April 5, 2007 (Document No. 53).

Because the *Second Reconsideration Motion* has been withdrawn at the Debtor's
request, there is now no need for the Court to consider any of the matters raised therein.  However,
the withdrawal of the *Second Reconsideration Motion* does not erase the fact or consequence of
events that occurred prior to the withdrawal.  In particular, Colecchia's repeated failure to comply
with the Court's Orders  demands further comment and action by the Court since, as revealed during
the May 9th hearing, his conduct constituted a deliberate disregard of this Court's Orders.

To briefly recap, Colecchia made statements at the May 9th hearing wherein he
acknowledged that he knew he was expected to name all the unsecured creditors as respondents in
the motion caption but deliberately chose not to do so because he believed the Court lacked the
authority to demand such a requirement.[16]  At the time of the May 9th argument, in expounding upon
his basis for reconsideration of the prior case dismissal, Colecchia admitted that he was aware of the
Court's local "captioning rule"[17] which requires all creditors/respondents to be named in a pleading

---

[16]      *See* the discussion *supra*, text and at n. 12-14.

[17]      *LR 9004-1*, titled "Captions of Pleadings and Orders," states that "[t]he caption of any pleading, all responses
and replies thereto, and any proposed order shall conform substantially to Official Bankruptcy Form 16D governing adversary
captions except that the party seeking relief shall be designated as 'Movant' and the party against whom relief is sought shall be
designated as 'Respondent.' *LR 9004-1* directs the reader to *Local Form No. 17* which illustrates the form of the caption for motion
practice, i.e., among other things, after listing the proceeding name and case number, a sub-caption naming the affected parties in
the traditional "Plaintiff v. Defendant" or "Movant v. Respondent" style is required.

caption yet he also intentionally chose not to comply with that requirement.[18]  When prodded by the

Court about the Court's specific directive in this particular matter with respect to the inclusion of

parties as respondents in the caption, Colecchia admitted, "we are required to name the creditors in

the caption."[19]  Despite this knowledge, Colecchia intentionally and deliberately chose not to comply

with the *Local Rules* and the Order.


*Intentional Refusal to Comply with a Court Order*


Colecchia argued that he was not obligated to comply with the captioning requirement

because it was beyond this Court's power and was "actually illegal" for the Court to require it in its

*Local Rules* and in particular, this matter. [20]  Before turning to a  discussion of that contention, and

assuming that Colecchia's position is sincerely held, it is nevertheless abundantly clear that an

attorney's belief that an order or a local rule is improper does <u>not</u> give him a license to ignore it. As

the United States Supreme Court has clearly stated:

> We begin with the basic proposition that all orders and judgments of courts
> must be complied with promptly. If a person to whom a court directs an
> order believes that order is incorrect the remedy is to appeal, but, absent a
> stay, he must comply promptly with the order pending appeal. Persons who
> make private determinations of the law and refuse to obey an order generally
> risk criminal contempt even if the order is ultimately ruled incorrect .... The
> orderly and expeditious administration of justice by the courts requires that
> 'an order issued by a court with jurisdiction over the subject matter and
> person must be obeyed by the parties until it is reversed by orderly and
> proper proceedings.'  *In re United States v. United Mine Workers*, 330
> U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

---

[18]     *See Transcript of May 9, 2007 Hearing*, Document 63 at p. 9, l. 12-13; p. 10, l. 3-6.

[19]     *Id.* at p. 9, l. 12-13.

[20]     *Id.* at p. 11, l. 6-10.

13

*Maness v. Meyers* 419 U.S. 449, 458-459, 95 S.Ct. 584, 591 (U.S.Tex. 1975). *See also Commw. of Pa. v. Local Union 542, Intern. Union of Operating Engineers* 552 F.2d 498, 506-07 (3rd Cir. 1977) (upholding criminal contempt finding against attorney for failure to follow court order since the attorney's belief as to the merit of the order was irrelevant). If Colecchia was of the belief that the captioning requirement was unlawful, he had a remedy: appeal the matter to the District Court. Instead, he chose to engage in contumacious conduct that can in no way be excused.[21] *See, e.g. Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888, 897 (3rd Cir. 1992) (when a party refuses to obey a court order, civil sanctions may be used to coerce compliance and criminal sanctions to punish the disobedient conduct); *Banner v. City of Flint*, 99 Fed. App. 29, 39 (6th Cir. 2004) (it is completely unacceptable for an attorney to flagrantly and purposefully defy an order of court even if the decision to do so is premised on a good faith disagreement over the validity of the order); *In re Katz*, 476 F. Supp. 2d 572, 577 (W.D. Va. 2007) (counsel's violation of court order by calling opposing witnesses "liars" during closing arguments was willful and contumacious and supported a finding of contempt).

Because of his obligation to comply with the Court's Order even if he thought it was "illegal," it is not necessary for the Court to proceed any further and address Colecchia's contention in that regard. Nevertheless, under the circumstances, the Court believes it beneficial to further explain its reasoning and legal basis for requiring the application of its Local Rule in this instance

---

[21] What is particularly perplexing and troubling to the Court is that the actions of Colecchia cannot by any stretch be rationalized as "misguided but zealous advocacy" on behalf of his client. The only possible effect of compliance with the captioning requirement would have been better notice to the affected creditors. The Debtor's rights would not have been hindered in the least. Compare, *e.g.*, *Local Union 452, 552 F.2d at 509-10* (counsel defied court's evidentiary ruling in misguided effort to ensure contents of excluded documents were available as part of record on appeal).

mandating use of a caption along with an explanation in the body of the Motion as to the purpose and

effect of the requested changes to the confirmed Plan.

### Identification of Parties in the Motion Caption

It is beyond dispute that motions filed in a bankruptcy proceeding can significantly

affect the substantive rights of respondent parties.  *See, e.g. In re Owens Corning*, 419 F.3d 195, 211

(3rd Cir. 2005) (noting that motion for substantive consolidation of cases may profoundly affect

creditors' rights and recoveries); *In re Friday*, 304 B.R. 537 (Bkrtcy. N.D. Ga. 2003) (motion to

modify confirmed Ch. 13 plan denied because it affected creditor rights without providing meaningful

due process notice to them).  For instance here, the motion the Court required Colecchia to file was

intended to modify rights previously created by the Plan confirmed on an interim basis.[22]  Colecchia

was attempting to modify those rights by decreasing the previously agreed upon percentage to be paid

to unsecured creditors by virtue of the *Confirmation Order*, thereby significantly affecting their rights.

Although *11 U.S.C. §1329* specifically allows for plan modification in certain circumstances following

confirmation, those affected creditors relying on a prior confirmation order should at the very least

receive due process and appropriate notice of any attempt to change those vested rights.  *See  In re

O'Brien Environmental Energy, Inc.*, 188 F.3d 116 (3rd Cir. 1999) (holding that a creditor who had

failed to timely assert its claim was justified for "excusable neglect" reasons pursuant to *Fed.R.Civ.P.

60(b)(1)* since the debtor's application to establish cure amounts failed, among other things, to

---

[22]        There is no qualitative difference between a standard plan confirmation order issued in this District and the
standard interim plan confirmation order.  Each creates vested rights in creditors with the latter simply containing agreed upon
conditions precedent to be performed by a debtor prior to entry of the former and allowing for creditor distributions to occur pending
completion of the conditions precedent and entry of the final confirmation order.

reference the creditor's claim or indicate the effect of the application on the claim and therefore, due

process, i.e., adequate notice and an opportunity to be heard, was not satisfied); *See also*, *e.g.*, *In re*

*Bagby* 218 B.R. 878, 886 (Bkrtcy.W.D.Tenn.,1998) (all affected creditors are entitled to notice and

an opportunity to object to a proposed plan modification); *In re Friday, supra,* 304 B.R. at 541 (plan

modification must include the name of each creditor whose claim or claims is to be modified);

*Fed.R.Bankr.P. 9014(a), (b).*

It is out of this due process concern that the Court required the specific form and

substance of the Motion Colecchia consistently refused to file until his filing of the *Second*

*Reconsideration Motion.*  By implementing the local captioning rule in the manner required, i.e.,

affected creditors be individually named in the caption and, within the body of the motion, a

description of how the amended plan would affect the existing rights of the unsecured creditors as

previously established by the *Confirmation Order*, the due process requirements implicated by *11*

*U.S.C. §1329* and *Fed.R.Bankr.P. 9014* would be satisfied.

In today's litigation climate the general public is sensitive to the point that when a

person receives a formal court document with a caption that includes that person's name, clearly

stated, the reasonable person perceives it to be an important document.  The document involves a

matter of significance and consequence.  Upon receipt of such a document that person knows he

should contact a lawyer, or at the very least, not ignore the matter.[23]  And if after receipt the

---

[23]     Conversely, when a person receives a court document without a person's name in the caption, it is likely to lead to confusion and frustration.  A good example is furnished by the class actions which have proliferated in recent decades.  By reason of the sheer number of class members it is generally impossible to name individual members in the caption.  A common recipient reaction to a class action notice is to ask "why am I getting this" and then, typically, end up doing nothing because of an inability to decipher the notice and a perception that it must not be that important because it does not even include a person's name.  While this style of anonymous captioning may be a "necessary evil" in class action practice, it is less than ideal and should not be the norm in bankruptcy where it is practicable to individually name respondents.  *See also* n. 24 and 26, *infra*.

16

document is ignored, it is difficult to argue with any credibility that the party receiving it failed to realize their rights or property were at risk. Therefore, when a creditor receives a motion with its name clearly set forth in the caption as a "respondent" it is more likely to realize the potential significance of the motion to it over one who receives a motion generically identifying the respondents as "all creditors" or by some similar, generic and uninformative phrase as used by Colecchia herein.[24]

### *The Court's Authority to Enforce Its Local "Captioning Rule"*

LR 9004-1 embodies this Court's captioning rule which requires all parties in interest to be specifically named in the caption of all pleadings.[25]  As noted, Colecchia maintains that *LR 9004-1* is "actually illegal." He relied upon *Fed.R.Civ.P. 10(c)* in support of this contention. *Rule 10(c)*, made applicable to bankruptcy adversary proceedings through *Fed.R.Bankr.P. 7010*, states:

---

[24]       The Court recognizes the need for flexibility in implementing *Rule 9004-1*, its Local Rule as to captioning. For instance, in a case involving an exceptionally large number of creditors, the Court might well entertain a motion seeking relief from what would be an excessively burdensome captioning requirement. The present case does not fall into that category as the number of creditors that needed to be named was very manageable, and in fact, Debtor's counsel never claimed the requirement as it pertains to these facts was burdensome.

[25]       *LR 9004-1* has been in existence in substantially the same form for more than 20 years. The original purpose for the captioning rule was actually one of administrative convenience rather than out of due process concerns so as to allow for the proper handling and docketing of the large volume of motions being filed particularly in Chapter 13 matters. It was intended to assist the Clerk's Office by allowing it to expeditiously and efficiently match the appropriate responses to the applicable motion. This procedure allowed court personnel and the parties to determine "at a glance" what a pleading related to and identify the parties involved without having to review the entire document  A collateral benefit from implementing the Rule flowed to judges, attorneys and creditors as well by also allowing them to readily distinguish pleadings for similar purposes and facilitating the scheduling of and preparation for hearings.  The Rule was first approved and became part of the *Local Rules* on April 1, 1986.  Because of confusion as to its effect beyond simple motion practice, on October 3, 1988, and again in January of 1992, the Rule was clarified as to its breadth.  Enforcement provisions were also added in the event of failure to comply with its terms.  In September 2002, the time of the most recent modification of the Rule, the Court further clarified the Rule's scope, i.e., it applied to all pleadings, including objections and any other "requests for relief."  Clearly, when properly used, a separate, collateral benefit of the captioning rule arises by providing due process and notice to those parties potentially affected by the various "requests for relief" contained in a specific pleading.  As with all the Court's *Local Rules*, the captioning rule has repeatedly been approved by the U.S. District Court for the Western District of Pennsylvania pursuant to *Fed.R.Bankr.P. 9029(a)*, the most recent approval having occurred by Order dated June 16, 2004.

> **(c) Adoption by Reference; Exhibits.** *Statements in a pleading* may be
> adopted by reference in a different part of the same pleading or in another
> pleading or in any motion.

*Fed.R.Civ.P. 10(c)*(emphasis added). By its terms *Rule 10(c)* only permits "statements in a pleading"

to be adopted or incorporated by reference into another pleading or motion. Colecchia contends that

*Rule 10(c)* allows incorporation by reference as to all respondents required to be listed in the caption

by simply referencing "All Creditors Listed in the Current Matrix."[26] Even under Colecchia's theory,

to accomplish this result, Colecchia must qualify the official creditors' matrix as referenced in the

caption as a "statement in a pleading" under *Rule 10(c)*.

      The mere listing of creditors in a matrix does not constitute a "statement in a pleading"

which would allow the names of the creditors to merely be incorporated by reference as attempted

by Colecchia. First of all, the creditor's matrix does not qualify as a "pleading" for purposes of *Rule*

*10(c).  Fed.R.Civ.P. 7(a),* made applicable to bankruptcy adversary proceedings pursuant to

*Fed.R.Bankr.P. 7007,* contains a list of allowed pleadings and that list does not include a creditor's

---

[26]     Alternatively, Colecchia used the phrase "All Creditors in the Debtor's Matrix." Colecchia maintained that his use of these phrases in the various captions did "specifically" reference the affected creditors and therefore actually satisfied the Court's directive in this regard. Colecchia contends the certificate of service in certain filings "showed all parties to list were served." *See Motion* filed April 16, 2007, at Document No. 27. However, nowhere in any certificate of service does Colecchia identify or make any connection between the creditors in the matrix and the parties listed in the various certificates of service. Colecchia merely listed an array of parties, failing to identify them in any manner whatsoever. It is unclear if the list solely relates to unsecured creditors, comprises the "current matrix" or the "debtor's matrix." With apparent sincerity, Colecchia argued that a creditor receiving his Motion with the vague, general reference in the caption somehow could "connect the dots" and divine that the creditor's claim was affected by the motion simply by inclusion of the creditor's name on the service list. All that this type of documentation assures is that the recipient was on notice of an unidentified pleading without any clear indication of its relevancy, which unfortunately is often a by-product of the noticing system used throughout the bankruptcy process. Creditors, parties in interest, attorneys, governmental entities and sometimes totally unrelated parties, receive copies of documents generated by the system. Based on receipt of one of these documents, without a clear indication in the caption of the pleading as to the relevance of the matter to the specific recipient, to assume a creditor would comprehend and realize that existing rights were being compromised when the creditor, or the underlying basis for the modification of rights, is not specifically identified in any manner in the caption or body of the main document, strains credulity. *See: In re O'Brien, supra,* 199 F.3d at 129.

matrix or anything akin to it.[27]

Secondly, and of more importance to the Court, there is no specific language in *Fed.R.Civ.P. 10(c)* that permits incorporation by reference in captions. The "incorporation by reference" tool permitted by *Rule 10(c)* is designed for totally different situations than the one argued by Colecchia. For example, *Fed.R.Civ.P. 10(c)* authorizes incorporation by reference when adopting or incorporating lengthy factual allegations from a complaint into a subsequent pleading. *See, e.g., In re Jamuna Real Estate, LLC*, 365 B.R. 540, 553 (Bankr. E.D. Pa. April 25, 2007). It is clear from its terms, that the intended effect of *Rule 10(c)* was simply to facilitate pleadings that are "short, concise, and free of unwarranted repetition", as well as to promote "convenience" in pleading. 5A Wright and Miller*, Fed. Prac. & Proc. Civ. 3d at* §1326 (2007).

*Rule 10(c)* was never intended to apply to the use of captions where the parties to the action are identified and put on notice of being involved in the pending matter. Moreover, the implicit premise of Colecchia's position, that the ability to incorporate by reference is a sacrosanct right that can not be limited in any way by a court, is flawed. To the contrary, an incorporation by reference is always accompanied by the requirement that it be done with a degree of specificity and clarity which would enable a responding party to easily determine the nature and extent of the incorporation. Where use of this tool fails in that regard, courts maintain the power to take the necessary action to require a restatement of the referenced material. *See*, *e.g.* , *Wolfe v. Charter Forest Behavioral Health Systems, Inc.* 185 F.R.D. 225, 228-29 (W.D. La. 1999). *See also* 5A Wright & Miller, *supra*

---

[27]    The Official Creditors' Matrix is actually an organic document, subject to constant change and in a state of flux throughout the bankruptcy proceeding as creditors/parties in interest are added and deleted. A further problem with Colecchia's argument regarding the "incorporation by reference" convention is, that unless otherwise ordered by the Court, *Rule 10(c)* is only applicable to bankruptcy matters in the context of adversary proceedings. *See Fed.R.Bankr.P. 7001, 9014(c).*

( "[w]hen the reference requires a search into extraneous documents ... the court is justified if it orders the allegations repeated.").

Upon review of the Rule, *Fed.R.Civ.P. 10(a)*, rather than *Rule 10(c)*, is the most relevant procedural device for purposes of the present facts. *Rule 10(a)* provides:

> **(a)  Caption; Names of Parties.** Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a).  In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

*Fed.R.Civ.P. 10(a)*.  This Rule thus requires that at least the initial pleading in an adversary proceeding (the complaint) include a complete caption with the name of all parties. The obvious purpose for this requirement is to apprise the parties of the identities of their opponents and to protect the legitimate public interest in knowing the facts surrounding court proceedings. *27 Fed. Proc. L. Ed. §62:101 (2007)*.  Shortened forms of the caption are only permitted in those pleadings following the filing of the initial pleading which includes the comprehensive notice to all parties of their involvement.

In bankruptcy proceedings, a motion involving a contested matter is similar to a complaint since it can result in a determination that implicates the substantive legal rights of the parties. *See In re Owens Corning*, *supra*; *In re Friday*, 304 B.R. at 542-43.[28]  An excellent example

---

[28]    The motion which the Debtor was instructed to file pursuant to *11 U.S.C. §1329* in seeking a  modification of the *Confirmation Order* to reflect that unsecured creditors would not  receive a 100% payment as they were anticipating would fall within the residual procedural category of a "contested matter".  See the Advisory Committee Note to *Fed. R. Bankr. P. 9014* ("[w]henever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.")  Under *Rule 9014*, parties against whom relief is sought in contested matters are entitled to the same due process rights as those in an adversary proceeding.  See *6 Norton Bankr.L.& Prac. 2d §138:5 (2007)*.  Furthermore, *Rule 9014(c)*, after stating that certain of the rules in *Part VII* of the *Bankruptcy Rules* (relating to adversary proceedings) will apply in contested matters unless otherwise directed by the Court, provides that at any stage of a contested matter the Court may direct

is the Amended Plan that the Debtor sought to file in the present case which would have reduced the payout to unsecured creditors from the 100% they were expecting down to 0%. In these circumstances, by analogy, the Court concludes that the local captioning rule is entirely consistent with *Rule 10(a)* and, in fact, furthers the important purposes of that Rule. Further support for this view is found in *Fed.R.Civ.P. 7(b)(2)*[29], which provides that: " The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules." Thus, when a motion can fairly be viewed as functionally equivalent to a complaint in that it is commencing a new matter in which third party rights may be affected, it is entirely appropriate to require that a full caption be used.

Colecchia failed to comply with the captioning rule. He failed to comply with the Court's Order to utilize a full caption. By his own admission, he did so intentionally since he disagreed with the *Local Rule 9004-1* and the various Orders directing him to draft the caption in the manner indicated. Merely indicating the respondents in the caption by referencing "All Creditors Listed in the Current Matrix" does not adequately alert those creditors whose substantive interests may be at stake. *See In re O'Brien, supra; In re Friday*, *supra. See also In re Allen v. National R.R. Passenger Corp.,* 2004 WL 2830629 (E.D. Pa. 2004) (designation of "et al" in a complaint's caption, without an identification of the parties in the body of the complaint, did not satisfy the required *Rule 10(a)* identification); *See also In re Anderson*, 159 B.R. 830 (Bankr. N.D. Ill. 1993); *In re Austin*, 46 B.R. 358 (Bankr. E.D. Wis. 1985). Nor did Colecchia attach the relevant mailing matrix as an

---

that one or more of the other rules in *Part VII* shall apply. *Rule 7010* is in this latter category, and thus the Court's captioning rule is tantamount to a direction that, at least for contested matters, *Rule 7010(a)* shall apply.

[29]    Made applicable to adversary proceedings by *Fed.R.Bankr.P. 7007.*

exhibit to his Motion.  As such, adding further confusion to the method employed, Colecchia incorporated by reference a list to which the recipients of the Motion likely did not have ready access.[30]

*The Need to Allege Facts in Support of Plan Modification*

The Court's Order requiring the Debtor to file a motion seeking modification of the *Confirmation Order* pursuant to *11 U.S.C. §1329* also reflects the principle that modification of a confirmed plan is not something that is permitted as a matter of course.  The mere filing of an amended plan on the form required by this Court's *Local Rules*, without more, provides no supporting facts entitling a proponent to the proposed modification.  Rather, the proponent of a post-confirmation plan modification bears the burden of showing that a material change in circumstances, not reasonably anticipated at the time of confirmation, has occurred that would warrant relief from the prior confirmed plan.  See *In re Mellors*  2007 WL 2153240 *4 (Bkrtcy. W. D. Pa., July 26, 2007).  Although the Court need not make any such determination given the procedural posture of this case, had the Debtor not requested withdrawal of  his Motion, it is highly questionable whether

---

[30]      Colecchia also attaches a "cover sheet" to each of his filings, similar to a practice required by local procedural rule of several state county courts.  Although this Court has previously accepted these pleadings for purposes of filing, neither the *Federal Rules of Bankruptcy Procedure* nor the *Local Rules* of this Court sanction or permit such a practice.  Under the circumstances in which it is used by Colecchia in the bankruptcy setting, as to the parties receiving the document, this unnecessary addition actually further complicates and confuses the notice issue.  Unlike the important administrative notice function the cover sheet fulfills in state court practice where the caption identifies the specific parties whose property and rights may actually be affected by the relief requested in the pleading, Colecchia's cover sheet merely makes general reference to a list of parties contained on a certain "matrix."  Colecchia compounds the notice problem and heightens the confusion to the document recipient by identifying the attached document on the cover sheet with a motion title different from the title contained on the document itself. *See, e.g., Motion* filed April 16, 2007, at Document No. 57; *Motion* filed February 10, 2007, at Document No. 26; and, *Motion* filed February 5, 2007, at Document No. 24.  Because appending a cover page is not required or even authorized in this Court, and because the Court feels attaching an additional page to pleadings adds an extra layer of confusion to the reader in ascertaining the content of the pleading in hand, the practice of attaching a cover page to the front of pleadings is unnecessary and should cease.

the Debtor could have met the required standard on the current record.

Consistent with this notion and apparently lost on Colecchia was that by the Court's March 16th Order, in addition to meeting the requirements of the local captioning rule, the Debtor was also required to include allegations in the body of his Motion specifying the manner in which the proposed, amended plan would impact the affected unsecured creditors. In a nutshell, any proposed motion should have also included a statement pursuant to *Section 1329* identifying the material change in circumstances justifying the requested modification of the existing, confirmed plan. *See In re Mellors* at *5. Neither the *Second Reconsideration Motion* contained such a statement nor did Colecchia in his defense for non-compliance address this aspect of the March 16th Order at time of the May 9th hearing.

Until recently, the practice norm in this District for modifying confirmed plans has simply been to file an amended plan. When no vested creditor rights are affected by the proposed, amended plan, this is an efficient, expeditious and appropriate approach. All creditors are required to be notified and served with a copy of the proposed, amended plan so if an interest in reviewing the document actually exists, the creditor has ready access to it. The same plan confirmation process as used for initial plan approval is implemented which also allows for the filing of timely objections. Plan conciliation conferences take place followed by hearings on unresolved plan objections. Ultimately and if appropriate, the amended plan is confirmed by the Court. Often in this process proponents of these amended plans seek to affect vested rights of creditors created in existing, confirmed plans. Rarely do unsecured creditors or non-institutional, secured creditors become involved in this plan amendment process especially after any appreciable lapse of time following the petition filing. By

23

instead requiring plan modifications pursuant to *Section 1329* to proceed by motion which includes a statement of the specific change being requested to the existing, confirmed plan and following the more exacting notice procedure required by *Fed.R.Bankr.P. 9013* and *9014(a),* claims that due process has been sacrificed when determining the res judicata effect of a final, amended plan confirmation order, are significantly reduced.

Here, the Court required Colecchia to articulate in the body of his Motion the specific affect on unsecured creditors if the Debtor's proposed, amended plan was confirmed since he was attempting to reduce the unsecured creditors' previously approved 100% payment to 0%.  By setting these allegations forth in the Motion, and also complying with the local captioning rule, upon a short review of the Motion itself, each affected creditor would be in  a better position to understand the impact of the amended plan and the effect of any changes ultimately approved by the Court.  By specifically articulating these changes by separate motion, any unusual or potentially inappropriate plan provisions would be clearly identified, and in addition to the other benefits already mentioned, this could avoid any claim that a debtor "buried" objectionable terms in the body of the proposed, amended plan when the Court is later called upon to consider the appropriate notice and res judicata effect of the order finally approving the requested plan modifications.  *See:  In re Szostek*, 886 F.2d 1405 (3d Cir. 1989); *In re Szalinski*, 360 B.R. 104 (Bkrtcy. W.D. Pa. 2007).

### *CONCLUSION*

Debtor's *Request to Withdraw,* treated as a motion for leave to withdraw the *Second Reconsideration Motion,* will be granted.  The second aspect of the *Request to Withdraw*, treated as

24

a motion to dismiss the case generally, will be denied as moot. The case will remain dismissed, without prejudice, as directed by the Order of April 5, 2007 (Document No. 53). By his own admission, Colecchia intentionally violated the Court's express Orders and captioning rule when he failed to list all creditors in the caption. *LR 9004-1* and this Court's Orders requiring all affected parties to be listed in the caption are not contrary to *Fed.R.Civ.P. 10(c)* and are in fact consistent with the caption requirements set forth in *Fed.R.Civ.P. 10(a)*. But even if *Rule 10(c)* were found to be applicable in this case, that would not serve as an excuse for Colecchia's intentional violation of this Court's Orders. An appropriate Order will be issued. [31]

## ORDER

*AND NOW*, this *26th* day of *September, 2007*, after review of the Debtor's *Motion for Reconsideration Motion to Reopen* filed on April 16, 2007, at Document No. 57 (*"Second Reconsideration Motion"*), and the *Request to Withdraw* filed on June 5, 2007, at Document No. 67, together with a review of the transcript of the hearing held on May 9, 2007, filed at Document No. 63,

It is hereby **ORDERED, ADJUDGED and DECREED** that the *Request to Withdraw,* treated in part as a motion for leave to withdraw the *Second Reconsideration Motion,* is **GRANTED,** and therefore the *Second Reconsideration Motion* is deemed withdrawn.

It is **FURTHER ORDERED** that the *Request to Withdraw,* treated in part as a motion to dismiss the case, generally, is **DENIED** as moot in light of the April 5, 2007 Order of this Court

---

[31] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

25

which previously dismissed the case without prejudice, ***provided however***, due to events occurring and coming to the Court's attention subsequent to said dismissal Order, the case shall remain open for the limited purpose of addressing those specific matters as set forth in the final paragraph of this Order. The automatic stay of *11 U.S.C. §362(a)* shall not be effective or enforceable in any manner retroactive to April 5, 2007. Likewise, as of the same date, all property of the estate shall have re-vested in the Debtor.

It is **FURTHER ORDERED** that a **Rule to Show Cause** is issued upon Attorney David A. Colecchia and he is directed to ***personally*** appear before this Court on **November 14, 2007 at 2:30 P.M.** in Courtroom D, 54th floor, U.S. Steel Building, 600 Grant St., Pittsburgh, Pa 15219 to show cause why, if at all, he should not be subject to progressive sanctions in accordance with the February 27, 2007 **Memorandum Order** previously entered in this case at Document No. 38, or otherwise subject to sanctions for intentional non-compliance with the Orders of February 22, 2007 entered at Document No. 39, and March 16, 2007 entered at Document No. 46 and *Local Rule 9004-1* of this Court, all as more fully set forth in the foregoing *Memorandum Opinion*.

Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
    Ronda Winnecour, Chapter 13 Trustee
    Debtor
    David A. Colecchia, Esq.

CM:    David A. Colecchia, Esq.
    Law Care
    3214 South Maple Avenue
    Greensburg, PA 15601-3219

    Robert O. Lampl, Esq.    Donald R. Calaiaro, Esq.
    960 Penn Avenue, Suite 1200    Grant Building, Suite 1105
    Pittsburgh, PA 15222    310 Grant Street
        Pittsburgh, PA 15219-2202